**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 1:19-CV-21167-GAYLES

NORMA MARTIN,

     Plaintiff,

v.

E.C. PUBLICATIONS, INC. and
WARNER COMMUNICATIONS, LLC,
d/b/a DC COMICS,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court upon Defendants E.C. Publications, DC Comics, Inc. and Warner Communications LLC's Motion for Summary Judgment (ECF No. 40). This matter was referred to the undersigned United States Magistrate Judge by the Honorable Darrin P. Gayles for a ruling consistent with the Eleventh Circuit Court of Appeals' directive on remand (ECF No. 99). Plaintiff Norma Martin filed a Verified Opposition to Defendants' Motion for Summary Judgment and Incorporated Memorandum of Law ("Response") (ECF No. 54), to which Defendants filed a Reply (ECF No. 102). Having reviewed the Motion, Response, Reply, and being otherwise duly advised on the matter, the undersigned hereby **RECOMMENDS** that Defendants' Motion for Summary Judgment be **GRANTED**.

## I.    BACKGROUND

### a.  Procedural Background

In her Second Amended Complaint, Plaintiff alleges Defendants engaged in trademark infringement, trademark counterfeiting, unfair competition and false designation of origin, and contributory and vicarious trademark infringement, all in violation of the Lanham Act, 15 U.S.C.

1

§ 1114, 1116, 1117, 1125(a) and Florida Law (ECF No. 13).  Plaintiff also brings a right of publicity claim, pursuant to Florida Statute § 540.08, alleging that Defendants engaged in unauthorized misappropriation of her late-husband's name or likeness.  Plaintiff seeks injunctive and declaratory relief and monetary damages.

After Defendants moved for summary judgment on Plaintiff's trademark infringement claims, the Honorable Federico A. Moreno held a hearing on Defendants' Motion on January 29, 2020.  The Court granted summary judgment in Defendants' favor in an oral decision, having concluded that each of Plaintiff's claims were either time-barred or nonactionable (ECF No. 58).  Plaintiff appealed the Court's decision to the Eleventh Circuit (ECF No. 64).

The Eleventh Circuit affirmed the Court's grant of summary judgment in favor of Defendants on Plaintiff's claims involving pre-2015 and foreign publications.  The Eleventh Circuit determined that the Court correctly concluded that Plaintiff's claims are governed by a four-year limitations period.  As such, Plaintiff's claims involving works published prior to March 2015 are time-barred.  The Eleventh Circuit further determined that the Court erred in concluding that Plaintiff's claims were time-barred in their entirety.  Some of the publications underlying Plaintiff's claims were timely filed and fell within the applicable limitations period.[1]  Because the Court granted summary judgment solely on the timeliness of Plaintiff's claims, and did not address the merits of the claims involving non-foreign publications or set out a legal analysis pertinent to the substantive issues raised by Defendants, the Court of Appeals vacated the Court's grant of summary judgment on Plaintiff's timely filed claims involving post-2015, non-foreign publications, and remanded for further proceedings.

---

[1] These publications consist of three magazines and two webpages, further described below.

The case was reassigned to the Honorable Darrin P. Gayles pursuant to 28 U.S.C. § 455 and the Court's Internal Operating Procedures for all further proceedings (ECF No. 74). After being granted leave by the Court (ECF No. 100), Defendants filed a Reply Memorandum and Reply Statement of Material Facts to its Motion for Summary Judgment (ECF Nos. 102; 103).

Plaintiff subsequently filed an "Unopposed Sur-Response in Opposition to Defendants' Reply Memorandum in Support of Defendants' Motion for Summary Judgment and Incorporated Memorandum of Law" ("Plaintiff's Sur-Response") (ECF No. 109), and a supporting statement of material facts (ECF No. 110), however, Plaintiff did so without first seeking leave of court or actually certifying Defendants' non-opposition to the filing. Thus, Plaintiff filed her Sur-Response in violation of Local Rule 7.1(c)(1), which prohibits the filing of sur-replies without first obtaining the leave of court. *See* S.D. Fla. 7.1(c)(1) ("No further or additional memoranda of law"—beyond the motion, response, or reply—"shall be filed and served without prior leave of Court."). Plaintiff's *pro se* status does not excuse her non-compliance with the local rules. *Wakefield v. City of Pembroke Pines*, No. 05-61536-CIV, 2005 WL 8170767, at *1 (S.D. Fla. Oct. 13, 2005). While the Court may disregard Plaintiff's Sur-Response, to the extent I have considered it in my analysis, I have so noted.

### b. Factual Background

The following facts are supported by Defendants' Statement of Material Facts (ECF No. 41); those facts disputed by Plaintiff *and supported by record evidence* are also noted. Plaintiff is the widow of the late Don Martin, a cartoonist who created a variety of illustrated work published in humorous cartoon books and magazines, such as MAD magazine, which is owned by Defendants. Don Martin passed away on January 1, 2000. Defendants own the rights to publish the illustrated works created for them by Don Martin (ECF No. 41 at ¶ 3).

On December 29, 2008, Plaintiff initiated the process to obtain a federally registered trademark in the name "Don Martin" (ECF No. 41 at ¶ 7 (citing ECF No. 41-1 at 91:19–92:19). Initially, the trademark examiner refused to register the mark ("Refusal to Register") (ECF No. 41 at ¶ 8 (citing ECF No. 41-4)). The Refusal to Register required that Plaintiff narrow the requested trademark's scope from books to a specific category like children's books or comic books (ECF No. 41 at ¶ 10 (citing ECF No. 41-4 at 4)). The Refusal to Register also required that Plaintiff submit a verified statement that stated: "Applicant has a bona fide intention to use the mark in commerce on or in connection with the goods or services listed in the application as of the filing date of the application." (*id*.). Plaintiff responded to the Refusal to Register and based on Plaintiff's response, on or about January 16, 2010, the trademark examiner granted Plaintiff a federal trademark registration in the name "DON MARTIN®" for use in connection with "Books, namely, humorous cartoon books" (ECF No. 41 at ¶ 12 (citing ECF No. 13 at 76–77)).

Plaintiff has not utilized the registered mark in connection with any humorous books, other than *Brain Games for Kids*, by Don Martin ("*Brain Games*"), a single publication in 2007 (ECF No. 41 at ¶¶ 5, 13). *Brain Games* sells multiple (25–50) copies per year (ECF No. 55 at ¶ 13). Plaintiff testified that she intends to publish a second humorous book, *The Sounds of the Seasons*, by Don Martin; she expected that publication to occur in 2020 (ECF No. 55 at ¶¶ 17, 18).

On March 27, 2019, Plaintiff initiated this action asserting various trademark infringement and unfair competition claims relating to the alleged unauthorized use, by Defendants, of the purported trademark DON MARTIN®, the common law name Don Martin, or the likeness of Plaintiff's late-husband, Don Martin, in connection with the publication and sale of humorous cartoon books.

Defendants have shown that, in the four years prior to Plaintiff's initiation of this lawsuit, the only publication by Defendants of any allegedly infringing use of Plaintiff's mark are limited to three magazines: *MAD Spoofs Sci-Fi* (2016), *MAD Spoofs the 80's* (2016), and *MAD Stocking Stuffer* (2017) (ECF No. 41-10), and two webpages: "What's Your Don Martin Sound Effects Name?" and "Fonebone Friday" (ECF No. 41 at ¶¶ 27, 28 (citing ECF No. 41-10 at 161:20–166:22; 170:6–19)). The name "Don Martin" does not appear in the title of the magazines or the webpages (ECF No. 41 at ¶ 28).

Plaintiff further alleges that Defendants have used Don Martin's name as an internet or app meta tag (a search device) and hundreds of her late-husband's works can be found on MAD webpages (ECF No. 55 ¶ 27). Defendants dispute this, noting that Plaintiff has advanced no evidence of such meta tags (ECF No. 103 at ¶ 27). In defense of her claims, Plaintiff advances no evidence of confusion and testified that she has not conducted any surveys relating to the distinctiveness of the name Don Martin as a trademark for humorous cartoon books (ECF No. 41 at ¶ 33 (citing ECF No. 41-1 at 188:21-190:7)).

## II.    APPLICABLE LAW

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must identify an absence of evidence to support the nonmoving party's case. *Id.* at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts, and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must support its assertion that a genuine material fact remains in dispute by citing to specific parts of the record. *Sutton v. Royal Caribbean Cruises Ltd.*, 285 F. Supp. 3d 1349, 1351 (S.D. Fla. 2018) ("In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, answers to interrogatories, and admissions that a specific fact exist demonstrating a genuine issue for trial."), *aff'd*, 774 F. App'x 508 (11th Cir. 2019). A fact or issue is material for purposes of summary judgment only if it might affect the outcome of the suit under the governing law. *Webb v. Carnival Corp.*, No. 15-CV-24230, 2017 WL 10795681, at *2 (S.D. Fla. Jan. 13, 2017). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Id.* (citing *Celotex Corp.*, 477 U.S. at 323).

In considering a motion for summary judgment, a court must evaluate the evidence and make all inferences in the light most favorable to the nonmoving party. *Sutton*, 285 F. Supp. at 135 (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 586). However, the nonmoving party may not merely point to a scintilla of evidence that creates a metaphysical doubt about an issue; instead, the evidence must be sufficient to allow a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co*., 475 U.S. at 586-87. Evidence is required; conclusory and unsubstantiated averments will not do, *Leigh v. Warner Bros., Inc*., 212 F.3d 1210, 1217 (11th Cir. 2000), and citations to specific record evidence are necessary, *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116-17 (11th Cir. 1993).

### III.    ANALYSIS

Following the Eleventh Circuit's remand, Plaintiff's remaining claims relate to five post-2015, non-foreign publications: three magazines, and two internet webpages.  Defendants seek summary judgment on Plaintiff's trademark infringement claims (Counts I–V), which allege infringement of federally registered trademarks, counterfeiting, unfair competition, as well as false designation of origin.  Plaintiff similarly seeks summary judgment based on a right of publicity claim (Count VIII), which alleges Plaintiff has a right of publicity over the use of her late-husband's name and likeness.[2]

#### a.    Trademark Claims

##### i.    Trademark Infringement

In Counts I and V of Plaintiff's Second Amended Complaint, Plaintiff alleges infringement of federally registered trademarks against Defendant pursuant to the Lanham Act and Florida common law.  "[T]he analysis of the Florida statutory and common law claims of trademark infringement . . . is the same as under the federal trademark infringement claim."  *Custom Mfg. and Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 652–53 (11th Cir. 2007) (quoting *Investacorp, Inc. v. Arabian Inv. Banking Corp.*, 931 F.2d 1519, 1521 (11th Cir. 1991)).

To establish a prima facie case of trademark infringement under § 43(a) of the Lanham Act, a plaintiff must show: "(1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two."  *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 358 (11th Cir. 1997) (citing *Conagra, Inc. v. Singleton*,

---

[2] Plaintiff's claims in Count VI (Federal Contributory Trademark Infringement and Counterfeiting) and Count VII (Vicarious Trademark Infringement) are based solely on foreign publications.  Accordingly, pursuant to the Eleventh Circuit's remand, summary judgment on these counts has been affirmed in Defendants' favor.

743 F.2d 1508, 1512 (11th Cir. 1984)); *see also Suntree Techs., Inc. v. Ecosense Intern., Inc.*, 693 F.3d 1338, 1346 (11th Cir. 2012). Defendants argue in their Motion that Plaintiff cannot establish either that she has a valid trademark—registered or otherwise—or that Defendants' alleged use is likely to result in customer confusion.

### 1. Plaintiff's Evidence of a Trademark

Plaintiff obtained the federally registered trademark of DON MARTIN® in 2010. Defendants contend that because Plaintiff has not published a humorous cartoon book bearing the name "Don Martin" or the trademark DON MARTIN® since 2007, and her testimony makes it clear that she has no actual plans to do so in the immediate future, Plaintiff has abandoned her trademark rights. In response, Plaintiff insists that she has continuously used the mark. Plaintiff advances no evidence in support of this statement, but rather cites generally to her verified complaint, which alleges that she has taken steps to promote and advertise the cartoon book "and other goods." (ECF No. 13 at ¶ 38).

A defendant must establish two elements in order to show that a plaintiff has abandoned a trademark: "(1) that the plaintiff has ceased using the mark in dispute and (2) that [she] has done so with an intent to not resume its use." *Natural Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1329-30 (11th Cir. 2008). Moreover, "[n]on-use of a mark for 3 consecutive years shall be prima facie evidence of abandonment." 15 U.S.C. § 1127. After establishing a prima facie case of abandonment as a result of a three-year dormancy, the burden shifts to the plaintiff to demonstrate her bona fide intent to resume use. *Natural Answers*, 529 F.3d at 1330.

Record evidence shows that Plaintiff has not used her registered mark since 2007—well beyond the requisite three-year period of dormancy. Plaintiff alleges that a second posthumous book entitled *The Sounds of the Seasons* by Don Martin is forthcoming and that it is under

agreement with the publisher Author House (ECF No. 55 ¶ 17).  Plaintiff testified that she has contacted a "couple of companies" regarding a second book and has been "pulling the stuff together" from her late-husband's studio (ECF No. 41-1 at 109:16-113:7; 118:13-122:16). Plaintiff also claimed to have storyboards for the new books "in [her] mind." *Id*. Yet, "[s]uch an intent cannot be far-flung or indefinite; rather there must be an intent 'to resume use within the reasonably foreseeable future.'" *Natural Answers*, 529 F.3d at 1329 quoting *Silverman v. CBS Inc.,* 870 F.2d 40, 46 (2d Cir.1989).  Meaningfully, Plaintiff testified in 2019 that, at that time, she expected publication of the next book in 2020. There is no record evidence that she did so, and Plaintiff's unauthorized sur-reply filed in 2021 makes no mention that this occurred.  Despite Plaintiff's allegations and intentions, the only evidence of her use of the registered mark occurred over fourteen years ago and she has not provided evidence of her bona fide intent to resume its use.

Nonetheless, to satisfy the first element—proof of a valid trademark—a plaintiff need not have a registered mark.  *Id*. at 773.  "[T]he use of another's unregistered, *i.e.,* common law, trademark can constitute a violation of § 43(a) where the alleged unregistered trademarks used by the plaintiff are so associated with its goods that the use of the same or similar marks by another company constitutes a false representation that its goods came from the same source."  *Conagra, Inc.*, 743 F.2d at 1512-13.

The Lanham Act protects only those marks that are sufficiently "distinctive," meaning "capable of distinguishing the owner's goods [or services] from those of others . . . " *Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010).  The Eleventh Circuit recognizes four categories of distinctiveness:

(1) generic—marks that suggest the basic nature of the product or service;
(2) descriptive—marks that identify the characteristic or quality of a product or

service;
(3) suggestive—marks that suggest characteristics of the product or service and require an effort of the imagination by the consumer in order to be understood as descriptive;                                                                                  and
(4) arbitrary or fanciful—marks that bear no relationship to the product or service, and the strongest category of trademarks.

*Id.* at 774 (quoting *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 797–98 (11th Cir. 2003)).

Marks in category (2), descriptive marks, are not inherently distinctive, but they garner trademark protection where they have acquired "secondary meaning." *Id.* "A name has acquired secondary meaning when the primary significance of the term in the minds of the consuming public is not the product but the producer." *Id.* (quoting *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1358 (11th Cir. 2007) (alteration omitted)). "Names—both surnames and first names—are regarded as descriptive terms and therefore one who claims federal trademark rights in a name must prove that the name has acquired a secondary meaning." *Conagra,* 743 F.2d at 1513 (requiring a showing of secondary meaning for a surname to give rise to enforceable trademark rights).

There are four factors in assessing secondary meaning: (1) the length and nature of the name's use, (2) the nature and extent of advertising and promotion of the name, (3) the efforts of the plaintiff to promote a conscious connection between the name and the business, and (4) the degree of actual recognition by the public that the name designates the plaintiff's product or service. *Id.*

In addition to a federally registered trademark, Plaintiff claims that she has also acquired common law rights in the unregistered trademark and common law name Don Martin. In her Response, Plaintiff argues that she satisfied the four *Conagra* factors to establish secondary meaning of Don Martin. First, she emphasizes that the name Don Martin or Martin has been in

use for 68 years, beginning in 1952 when Don Martin made his first appearance in MAD Magazine. Plaintiff alleges that recognition of his trademark was included in advertising and agency agreements from the 1980's through the mid-1990's.  Second, Plaintiff alleges that Don Martin published about 900 pages of cartoons and gags in MAD Magazine from 1956 until 1988 and these, along with Don Martin's books, carried his name and were promoted by MAD.  She argues that MAD continues to promote her late-husband's name and works on the two webpages at issue. Third, Plaintiff contends that she has made an effort to promote a conscious connection in the public's mind between Don Martin's name and his works.  In support, she highlights how the public has purchased over twelve million Don Martin books, and how *Brain Games* has stayed in print for over twelve years, along with his and his earlier pocketbooks, which remained in print for twenty-five years.  She also avers that Don Martin magazines carried the trademark symbol ("tm") next to his name.  To demonstrate the fourth *Conagra* factor, Plaintiff describes a "Book Expo" held in 2007, for which Plaintiff states the book publisher promoted the book by use of Martin's signature, as proof of the extent to which the public actually identifies the name Don Martin with the product.

With each of Plaintiff's allegations, she has failed to demonstrate *her* use of her late-husband's name.  Plaintiff relies on examples of the historical association of her late-husband by Defendants and others.  The cited efforts to promote a connection between the mark and the business are, moreover, remote and sporadic.  Although Plaintiff claims that she intends to publish a second book, *The Sounds of the Seasons*, it is undisputed that Plaintiff has only used the name Don Martin in connection with one humorous cartoon book with her publication of *Brain Games*. This single example of *Brain Games* is not enough for Plaintiff to meet her burden to satisfy *Conagra* factors (1) through (3).  *See Natural Answers,* 529 F.3d at 1329.

11

For the fourth factor, Plaintiff admits that she has not conducted any surveys and offers no evidence related to the distinctiveness of the name Don Martin as a trademark for humorous cartoon books. Accordingly, Plaintiff has not adduced evidence sufficient to that the name Don Martin has acquired secondary meaning.

2.   Likelihood of Confusion

In deciding whether Plaintiff has shown the second element in an infringement claim, the Court should look to the following factors: "(1) type of mark, (2) similarity of mark, (3) similarity of the products the marks represent, (4) similarity of the parties' retail outlets and customers, (5) similarity of advertising media used, (6) defendant's intent and (7) actual confusion." *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 122 F.3d 1379, 1382 (11th Cir. 1997) (per curiam). The Court should consider all of the factors together, and no single factor is dispositive. *It's a 10, Inc. v. Beauty Elite Grp., Inc.*, No. 13-60154-CIV, 2013 WL 6834804, at *3 (S.D. Fla. Dec. 23, 2013) (granting summary judgment, in part, on trademark infringement claims). The Court must evaluate the weight to be accorded to the individual subsidiary facts and then make its ultimate fact decision. *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 840 (11th Cir. 1983).

Don Martin's name appears in the allegedly infringing publications. In a cartoon titled "Star Trek II" from *MAD Spoofs Sci-Fi*, Don Martin's name appears once (ECF No. 41-10 at 7). In *MAD Spoofs the 80's*, Don Martin's name is included in the title and he is indicated as the artist in multiple cartoons: "One Fine Morning at the Office," "Don Martin's Return of the Jedi," and "One Fine Day Crosstown" (*id*. at 10-13). Finally, with *MAD Stocking Stuffer*, the "One Glorious December Morning" cartoon also shows Don Martin's name and credits him as the artist (*id*. at 4).

In her Response, Plaintiff maintains that she has responded to Defendants' arguments relating to the likelihood of confusion in her Verified Response with Corrections to and Amplifications of Defendants' Statement of Material Facts in Support of a Motion for Summary Judgment ("Response to Defendants' Statement of Material Facts") (ECF No. 55 at ¶ 33). Plaintiff states that her "defense will not be repeated" (ECF No. 54 at 24). Upon review of the Response to Defendants' Statement of Material Facts, however, the undersigned notes Plaintiff merely indicated that the question regarding a likelihood of confusion will "soon be ripe" for the Eleventh Circuit to examine and rule on it (*id.*).

Of the three magazines that are at issue, none use Don Martin's name on the cover as a mark and all three give a fair use credit to Don Martin as the artist (ECF No. 41-10).

Regarding the webpages, Plaintiff attached multiple screen shots to her Second Amended Complaint, containing what she alleges to show meta tags of her late-husband's name in the lower left-hand corner, which she avers are key words that describe the contents of the webpage (ECF No. 13 at 79). Plaintiff contends that because some search engines utilize meta tags to identify webpages relative to a search, the use of Don Martin's name attracts viewers to Defendants' webpages (ECF No. 54 at 30). Citing *North American Medical Corp. v. Axiom Worldwide, Inc.*, 2008 WL 918411 (11th Cir. April 7, 2008), Plaintiff argues that Defendants are, therefore, using Don Martin's name to promote and advertise its products on the internet. Defendants dispute the existence of any evidence of their use of such tags and more importantly of any evidence that such use, assuming it exists, creates a likelihood of confusion.

In *North American Medical Corp.*, the Eleventh Circuit discussed *Playboy Enterprises, Inc. v. Netscape Communications Corp.,* 354 F.3d 1020 (9th Cir. 2004), which is similar to the instant case. In *Playboy,* the defendant sold advertisements to competitors of the plaintiff. 354

13

F.3d at 1023.  When a consumer conducted an internet search for certain terms such as "Playboy" and/or "Playmate," which were trademark terms owned by the plaintiff, a competitor's ad would pop up along the margin of the search result.  *Id.* at 1022-23.  The keying words, therefore, operated in hidden fashion, much like Plaintiff alleges the meta tags do here.  Because the banner ads appeared immediately after the searcher typed in the plaintiff's owned trademarks terms, invited the user to "click here," and did not clearly identify the sponsor of the ad, the user was likely to be confused regarding the sponsorship of the unlabeled advertisements.  *Id.* at 1025 n. 16, 1030.  Thus, the Ninth Circuit found that a genuine issue of fact existed as to the likelihood of confusion and reversed the district court's grant of summary judgment.

Here, instead of ads along the margins, when searchers key in "Don Martin," Plaintiff claims that they are directed to these webpages and further alleges that Defendants sell subscriptions and other goods through these webpages.  Unfortunately Plaintiff relies entirely on her own allegations that the metatags use her husband's name to direct traffic to these webpages. Even assuming the existence of metatags as alleged, it is unclear that the source confusion in the instant case would exist as it did in *Playboy*.  Plaintiff does not provide evidence that the discreet meta tags function in the manner in which she alleges, nor does she demonstrate how direction of traffic to these webpages create likelihood of confusion between Don Martin and Defendants' products.

Because Plaintiff has failed to adduce evidence that Defendants' use of Don Martin is likely to cause confusion, the undersigned recommends that the Court grant Defendants' Motion for Summary Judgment on Counts I and V.

ii.  Federal Trademark Counterfeiting

In Count II of Plaintiff's Second Amended Complaint, Plaintiff alleges federal trademark counterfeiting, arguing that Defendants have knowingly licensed and/or sold counterfeit cartoon books bearing the DON MARTIN® trademark, are knowingly permitting cartoon books to be sold in the United States and overseas, and/or are publishing, promoting, or otherwise selling, offering for sale and distributing counterfeit and infringing cartoon books bearing the DON MARTIN® trademark.

A claim for trademark counterfeiting must establish the same elements for a trademark infringement claim in addition to establishing that the defendant's alleged infringement was done intentionally and with knowledge that the mark was counterfeit.  *See Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1168 (11th Cir. 1994).  Defendants do not specifically address the intentionality aspect in their Motion for Summary Judgment, instead only stating that Plaintiff's claims for counterfeiting are properly analyzed under the same framework as claims for trademark infringement, which Plaintiff has failed to establish.  Plaintiff, on the other hand, offers that her letter to Defendants from June 4, 2010, establishes Defendants' willfulness (ECF No. 13 at 84).

The deficiencies in Plaintiff's evidence of trademark infringement discussed above are fatal to this claim as well.  Regarding Defendants' alleged intentional use of the mark, Plaintiff's only evidence is effectively a cease-and-desist letter to Defendants.  In the letter, Plaintiff notifies Defendants of her registered trademark and alleges that Defendants are planning to use her late-husband's name and animated works.  She requests that Defendants fully disclose the animated works and any licensing agreements, as well as provide her with a disk of the animated works for her to review and written proof that Defendants are not infringing the DON MARTIN® mark or her property rights.  Plaintiff also states that "[a]bsent such proof from [sic] you will be evidence

15

to me of your guilt" (*id.*).  Plaintiff claims this letter from 2010 proves Defendants' willfulness. Viewing this evidence in the light most favorable to Plaintiff, it fails to even address the requirement that she prove Defendants knew the mark they used was counterfeit.  Plaintiff has failed to adduce evidence that raises a genuine dispute of fact and as such, the undersigned recommends granting Defendants' Motion for Summary Judgment as to Count II.

iii.   Unfair Competition and False Designation of Origin

In Counts III and IV of her Second Amended Complaint, Plaintiff claims that Defendants have engaged in false advertising and unfair competition in violation of 15 U.S.C. § 1125(a) and Florida law.  Defendants argue that these claims are properly analyzed under the same legal framework for trademark infringement—in particular, Plaintiff must prove her rights in her registered mark and the name Don Martin for humorous books and that the use by Defendants is likely to cause confusion.

In Response, Plaintiff lists the elements to prove liability for trademark false designation of origin under the Lanham Act.  In support of her claim, Plaintiff relies on the colorized publication by Defendants of a 2007 work titled *The Completely MAD Don Martin*, one of her late-husband's works that was originally created in black and white.  Plaintiff argues that the later colorization of this work did not have Plaintiff's authorization or approval and, thus, Defendants' publication constitutes false designation of its origin.  Plaintiff asks the Court to enjoin the misuse of her late-husband's name in connection with the colorization of these black and white works. Defendants reply that Plaintiff has made an indirect moral rights *copyright* claim, by asking the Court to enjoin the misuse of Don Martin's name with these colorized works and has attempted to

argue that a different legal framework applies to unfair competition and false designation of origin under 15 U.S.C. § 1125(a).[3]

As with Plaintiff's trademark infringement claims discussed above, Plaintiff has not adduced evidence to prove her rights in her alleged trademark and that its use by Defendants is likely to cause confusion to support of her claims of unfair competition or false designation of origin. *Under Armour, Inc. v. 51nfljersey.com*, No. 13-62809-CIV, 2014 WL 1652044, at *5 (S.D. Fla. Apr. 23, 2014) ("The test for liability for false designation of origin under 15 U.S.C. § 1125(a) is the same as for a trademark counterfeiting and infringement claim—i.e., whether the public is likely to be deceived or confused by the similarity of the marks at issue"). Moreover, the works referenced in Plaintiff's Counts III and IV involve a pre-2015 and foreign publication that is no longer actionable in this case. Accordingly, the undersigned recommends granting summary judgment in Defendants' favor on Counts III and IV.

### b. Right of Publicity Claim

In Count VIII, Plaintiff claims that under Florida Statue Section 540.08, she has a right to publicity over the use of her late-husband's name or likeness. Defendants, on the other hand, argue that because Plaintiff's late husband consented to the use of his name or likeness by Defendants in connection with his works, the protection of Florida's publication of name or likeness statute does not apply. Defendants further contend that even if Don Martin had not consented to Defendants' use of his name or likeness, Plaintiff cannot prove that Don Martin's name or likeness was used to directly promote a product or service because an expressive work is not actionable under Section 540.08.

---

[3] Defendants only specifically reference "Count III" in their Reply, however as stated in footnote 6, the analysis of Plaintiff's unfair competition and false designation of origin claim (Count IV) is the same as under the federal trademark infringement claim (Count III).

Plaintiff contends that the use of her late husband's name on the cover and inside the jacket of certain publications is proof that Defendants used Don Martin's name or likeness to promote their products or services.  Plaintiff draws a comparison with *Lane v. MRA Holdings, LLC*, 242 F. Supp. 2d 1205, 1212-13 (M.D. Fla. 2002), in which the court found that the plaintiff's image was not used to promote a product of service.  Plaintiff argues that *Lane* is not applicable because, in contrast to the instant matter, the *Lane* plaintiff's image only appears in the video, not the actual cover of the packaging itself.

Plaintiff's argument relies on her allegation that her late-husband's name is on the cover, however, the publications she references in support of this argument are not the three magazines and two webpages which remain actionable after the Eleventh Circuit's remand.

Moreover, there is no evidence that Defendants' alleged use of Don Martin's name or likeness was used to directly promote a product or service other than the publication in which his name or likeness appeared.  Section 540.08 requires a plaintiff to establish that the defendant (1) used her name or likeness to directly promote a product or service (2) without her consent.  *Almeida v. Amazon.com. Inc.*, 456 F.3d 1316, 1325 (11th Cir. 2006).  Moreover, "[t]he use of one's name, likeness, portrait, or photograph, whether in a news report, television show, play, novel, or the like is not actionable unless the individual's name or likeness is used to directly promote a commercial product or service, separate and apart from the publication." *Fuentes v. Mega Media Holdings, Inc.*, 721 F. Supp. 2d 1255, 1258 (S.D. Fla. 2010) (citations omitted).  In the instant matter, Plaintiff's claims arising out of Defendants' alleged use of Don Martin's name or likeness relate only to the three magazines and two webpages themselves, not some other commercial product or service.  As such, the undersigned recommends granting summary judgment in Defendants' favor on Count VIII.

## IV.    RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Defendants' Motion for Summary Judgment (ECF No. 40) be **GRANTED**.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Darrin P. Gayles, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida, this 16th day of February, 2022.

_____
LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE

cc: All Counsel of Record